UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**ROBERT LEE ARTIC, SR.,**

    Petitioner,

    v.                                                                Case No. 14-CV-228-SCD

**CHRISTINE KULINSKI** and
**CHANTELL JEWELL,**

    Respondents.

**DECISION AND ORDER DENYING
PETITION FOR WRIT OF HABEAS CORPUS**

In 2007, Robert Lee Artic, Sr., was convicted of multiple drug offenses in Wisconsin state court. After his state appeals were rejected, Artic filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is in custody in violation of the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution. The respondents maintain that Artic has not satisfied his burden of proving that his claims merit relief under the deferential standards set forth in § 2254. I agree. Because the state courts' decisions denying his Fourth and Sixth Amendment claims were not objectively unreasonable and because the Fourteenth Amendment claims are procedurally barred, Artic is not entitled to relief under § 2254. Thus, his petition will be denied, and this action will be dismissed.

**BACKGROUND**

**I.    State-court proceedings**

On January 29, 2006, the Milwaukee Police Department possessed information that a person named Rob would pick up a quantity of cocaine at a house on 15th Street and deliver

the cocaine to a confidential informant. *See* ECF No. 8-12 at 4. At about 7:45 p.m., officers observed a van—which the informant identified as Rob's vehicle—park several houses down from 3206 North 15th Street. *Id.* at 4–5. Rob, later identified as Robert Artic, Jr. (the son of petitioner Robert Artic, Sr.), exited the van, entered 3206 North 15th Street for fewer than five minutes, and returned to the van. *Id.* at 5. He was arrested, and officers found two baggies of cocaine on the floor of the van.

After arresting Rob, officers approached 3206 North 15th Street to see if anyone was in the house. ECF No. 8-12 at 5. Detective Mark Wagner knocked on the front door and announced "Milwaukee Police" in a loud voice, but no one answered the door. Wagner noticed that a window was covered with cardboard and that a video camera was pointed toward the front porch. While Wagner continued to knock, Detective Nicole Davila went around to the back of the house and entered a fenced-in backyard. Once there, Davila observed a light go off inside the house. *Id.* at 6. Davila also heard what sounded like multiple people scurrying up and down the stairs inside the house, as well as a phone ringing inside.

Based on these observations, officers forced entry into the home. ECF No. 8-12 at 6. They located an individual sleeping in a rear bedroom; the first floor otherwise appeared to be in the process of renovation. Wagner then proceeded to a back stairway that led to the second floor. *Id.* at 7. At the top of the stairs, Wagner encountered a closed door. He knocked and announced, "Milwaukee Police." *Id.* A male voice answered, "Just a minute," and shortly afterwards, Artic answered the door. *Id.* Artic allowed officers to enter the second-floor unit. After they explained that Artic's son had just been arrested leaving the house with a large amount of cocaine, Artic orally consented to officers searching the residence. *Id.* at 7–8. Inside a fake pressurized can, officers found a plastic baggie containing a white residue. *Id.*

at 8. They also found sandwich baggies, latex gloves, a razor blade, a metal wire, a digital scale, and a shoebox containing suspected cocaine residue. *Id.* at 8–9. In addition, officers observed white powdery fingerprints on Artic's sweater. The substances inside the shoebox and on Artic's sweater later tested positive for cocaine residue. *Id.* at 9.

On February 3, 2006, Artic was charged in Milwaukee County Circuit Court with one count of maintaining a drug trafficking place and one count of possession with intent to deliver cocaine as party to a crime. *See* ECF No. 8-12 at 9. Prior to trial, Artic moved to suppress the evidence obtained in the search of the upstairs unit. The circuit court held an evidentiary hearing at which three officers (including Wagner and Davila) and Artic testified. *See* ECF No. 8-23. After hearing argument from the parties, the circuit court denied the motion, finding that the officers acted lawfully based on exigent circumstances and that Artic had voluntarily consented to the search. *Id.* at 99–110. A jury subsequently found Artic guilty of both counts. *See* ECF No. 8-1. He was sentenced to two years of imprisonment on count one and sixteen years of imprisonment on count two, to be served concurrently. *Id.*

Artic filed a postconviction motion alleging (among other things) that his trial lawyer was ineffective for failing to preserve the argument that the police improperly created their own exigent circumstances to force entry and for failing to object to Davila's testimony on grounds that her observations were illegally obtained by her presence within the constitutionally protected curtilage of Artic's home. *See* ECF No. 8-12 at 9. The circuit court denied the motion without a hearing. *Id.* at 9–10. On appeal, the Wisconsin Court of Appeals affirmed Artic's judgment of conviction and the order denying his postconviction motion. *See* ECF No. 8-5. The Wisconsin Supreme Court granted Artic's petition for review, *see* ECF No. 8-8, and on July 15, 2010, issued a decision affirming the court of appeals' decision. *See* ECF

3

No. 8-12; *see also State v. Artic*, 768 N.W.2d 430 (Wis. 2010). The court determined that Artic voluntarily consented to the search of the upstairs residence and that the search was sufficiently attenuated to purge the taint of the officers' illegal entry. ECF No. 8-12 at 3–4. Two justices dissented. *See id.* at 49–67. The United States Supreme Court denied Artic's petition for writ of certiorari on November 28, 2010. *See* ECF No. 8-15.

Proceeding without the assistance of counsel, on July 29, 2011, Artic filed a motion pursuant to Wis. Stat. § 974.06, arguing that postconviction counsel was ineffective for failing to argue that trial counsel was ineffective in five different ways. *See* ECF No. 8-19 at 2–3. The circuit court denied the motion without a hearing. *See id.* at 3. Artic appealed. *See* ECF Nos. 8-16, 8-17, 8-18. On August 13, 2013, the Wisconsin Court of Appeals issued a decision affirming the denial of Artic's § 974.06 motion. *See* ECF No. 8-19; *see also State v. Artic*, Appeal No. 2011AP2989, 2013 Wisc. App. LEXIS 658 (Wis. Ct. App. Aug. 13, 2013). The Wisconsin Supreme Court denied Artic's petition for review on December 16, 2013. *See* ECF No. 8-22.

II.  **Federal habeas proceedings**

On March 4, 2014, Artic filed a federal habeas petition presenting five grounds for relief. *See* ECF No. 1. U.S. District Judge Lynn Adelman screened the petition and ordered a response from the respondents. *See* ECF No. 4. After the respondents filed their answer, *see* ECF No. 8, the matter was reassigned to U.S. District Judge Pamela Pepper. Artic filed a brief in support of his petition on July 1, 2015. *See* ECF No. 11. On October 6, 2015, the respondents filed a brief in opposition. *See* ECF No. 14. The matter was reassigned to me in

4

May 2020 after the parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 16, 17, 18.

## STANDARD OF REVIEW

Artic's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under AEDPA, a prisoner in custody pursuant to a state-court judgment of conviction is entitled to federal habeas relief only if he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). With respect to claims adjudicated on the merits in state court, a federal court can grant an application for a writ of habeas corpus "only if the state court's decision was contrary to clearly established Supreme Court precedent, involved an unreasonable application of such precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in state court." *Promotor v. Pollard*, 628 F.3d 878, 888 (7th Cir. 2010) (citing 28 U.S.C. § 2254(d)); *see also White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

"A legal principle is 'clearly established' within the meaning of [§ 2254(d)(1)] only when it is embodied in a holding of [the Supreme Court]." *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) (citing *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A state-court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13 (opinion of O'Connor, J.).

Similarly, a state-court decision results in an "unreasonable application" of clearly established federal law when that court either "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's

5

case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. A writ of habeas corpus may not issue under the "unreasonable application" clause "simply because the federal court concludes that the state court erred. Rather, the applicant must demonstrate that the state court applied the Supreme Court's precedent in an objectively unreasonable manner." *Kubsch v. Neal*, 838 F.3d 845, 859 (7th Cir. 2016) (citing *Woodford v. Visciotti*, 537 U.S. 19, 24–25 (2002)). Thus, the petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Kubsch*, 838 F.3d at 859 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). For purposes of federal habeas review, state-court factual determinations are entitled to "substantial deference." *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015). To obtain relief under § 2254(d)(2), a petitioner must demonstrate that the state-court decision "rests upon fact-finding that ignores the clear and convincing weight of the evidence." *McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015) (quoting *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010)); *see also* 28 U.S.C. § 2254(e)(1). "The decision must be 'so inadequately supported by the record as to be arbitrary and therefore objectively unreasonable.'" *Alston v. Smith*, 840 F.3d 363, 370 (7th Cir. 2016) (quoting *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003)).

6

When applying the above standards, federal courts look to "the 'last reasoned state-court decision' to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (quoting *Johnson v. Williams,* 568 U.S. 289, 297 n.1 (2013)).

## ANALYSIS

Artic alleges five grounds for relief in his petition: (1) the officers' search of his residence violated the Fourth Amendment; (2) postconviction counsel was ineffective for failing to raise five instances of trial counsel's alleged ineffectiveness; (3) trial counsel was ineffective for failing to raise five issues; (4) the state courts violated his equal protection rights when they inconsistently applied their own precedent regarding the effect of the illegal entry; and (5) the state courts violated his due process rights by improperly applying the doctrine of *stare decisis*. *See* ECF No. 1 at 5–11. I will address each one in turn.

### I. Fourth Amendment claim

Artic's first argument—that officers violated his Fourth Amendment rights when they entered his home without a warrant or exigent circumstances—is precluded by *Stone v. Powell*, 428 U.S. 465, 495 (1976), which holds that a Fourth Amendment claim is not cognizable under § 2254 where the state has provided an opportunity for full and fair litigation of the claim.

The United States Supreme Court in *Stone* sharply limited the circumstances where a petitioner may be granted relief on the ground that evidence obtained in violation of his Fourth Amendment rights were used against him. So long as the petitioner had a "full and fair opportunity" to litigate the claim, *Stone* bars the claim. *See Stone*, 428 U.S. at 481–82. To determine whether the petitioner has had a full and fair opportunity to litigate a claim, the

7

court considers whether (1) the petitioner has clearly informed the state court of the factual basis for that claim and has argued that those facts constitute a violation of his Fourth Amendment rights; (2) the state court carefully and thoroughly analyzed the facts; and (3) the state court applied the proper constitutional case law to the facts. *Hampton v. Wyant*, 296 F.3d 560, 563 (2002) (citing *Pierson v. O'Leary*, 959 F.2d 1385, 1391 (7th Cir. 1992)).

The Seventh Circuit has explained that the *Stone* standard does not guarantee a correct outcome on a state prisoner's Fourth Amendment claim; it ensures that the prisoner had an adequate opportunity to pursue the claim in the state court system. *See Miranda v. Leibach*, 394 F.3d 984, 997 (7th Cir. 2005). Mistakes in a state court's treatment of a petitioner's Fourth Amendment claim are insufficient, by themselves, to overcome the *Stone* bar. *Id.* at 998. After all, a federal court's role on habeas review "is not to second-guess the state court on the merits of the petitioner's claim, but rather to assure [itself] that the state court heard the claim, looked to the right body of case law, and rendered an intellectually honest decision." *Monroe v. Davis*, 712 F.3d 1106, 1114 (7th Cir. 2013).

The record demonstrates that Artic had a full and fair opportunity to litigate his Fourth Amendment claim. Prior to trial, Artic filed a motion to suppress evidence discovered during the search, arguing that the search violated the Fourth Amendment. The circuit court conducted a hearing on his suppression motion, at which three law enforcement officers and Artic testified. At the end of the hearing, the court allowed argument from counsel. After the circuit court denied the motion, the officers and Artic testified at trial. A jury convicted Artic; he continued to litigate the Fourth Amendment issues through two rounds of appeal.

It is true that the specific Fourth Amendment claim asserted in this habeas action (that officers violated his Fourth Amendment rights when they created exigent circumstances to

8

Case 2:14-cv-00228-SCD   Filed 06/12/20   Page 8 of 18   Document 19

enter his home) was considered by the state courts in the context of the *Sixth* Amendment (ineffective assistance) rather than as a stand-alone Fourth Amendment claim. However, that was because the Sixth Amendment was the only avenue available to Artic at the time he raised the argument, his counsel having not argued the issue earlier. Thus, because the Sixth Amendment analysis presented Artic with the only "full and fair *opportunity*" to raise the Fourth Amendment issue under those circumstances, *Stone*, 428 U.S. at 481–82, I conclude that *Stone* bars the Fourth Amendment issue he now raises.

I am further persuaded that *Stone* applies given the extensive nature of the state supreme court's treatment of the Fourth Amendment issue. Specifically, although the court cited *Strickland v. Washington* and recognized that the claim had been brought as an ineffective assistance argument, the court glossed over the first *Strickland* prong (whether counsel's performance was deficient) and proceeded immediately to the question of prejudice. 466 U.S. 668 (1984). In doing so, the court addressed the Fourth Amendment issue head-on and applied a *de novo* standard of review. The court found no merit to the underlying Fourth Amendment claim, and therefore no prejudice under *Strickland*: "[t]he circuit court would have properly denied the motion to suppress even if Artic's counsel had raised the argument that the police created their own exigent circumstances . . ." *Artic*, 768 N.W.2d at 439.

The Wisconsin Supreme Court began by concluding that entry into the house was illegal because it was based on officer's observations from inside Artic's fenced-in backyard. The court, however, applied the consent exception to warrantless searches. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). The court thoroughly addressed the totality of the circumstances and concluded that the consent to search the upstairs was voluntary. Next, the court considered whether consent to search the upstairs was sufficiently attenuated from the

9

illegal home entry to purge the taint of the search. Citing *Brown v. Illinois*, 422 U.S. 590, 602–04, the court considered (1) the temporal proximity between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional search; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official conduct. The court concluded that the search of the upper level was sufficiently attenuated from the illegal entry into the home. The court summarized its lengthy analysis as follows:

> We conclude that Artic's consent to search was given freely and voluntarily, and not merely in acquiescence to police authority. We also conclude that the police search of Artic's upper-level residence was sufficiently attenuated from the illegal entry to purge the primary taint of that entry. While the temporal proximity was short, meaningful intervening circumstances took place and the official conduct was neither flagrant nor purposeful. For these reasons, Artic was not prejudiced by his counsel's failure in the suppression motion to raise the argument that the police created their own exigent circumstances and to object to testimony about observations made illegally from within the curtilage of Artic's house.

768 N.W.2d at 455. In essence, the court *agreed* with Artic's argument that the officers illegally entered his home, but the court found that Artic's voluntary consent insulated the resulting search from constitutional challenge. Because the court's extensive review of the Fourth Amendment issue was *de novo* (i.e., it was based on the question of prejudice rather than on any deferential analysis of counsel's decision-making), Artic received a full and fair hearing of the claim he now brings in this action.[1] Having received a full and fair hearing of the Fourth Amendment claim, he is not entitled to have his claim heard in this § 2254 action.

---

[1] In the alternative, to the extent the state courts' treatment of the issue would not be considered a full and fair hearing, that would be the result of Artic's failure to raise the issue as an independent argument in the first instance. As such, the Fourth Amendment claim raised in this action has never been fairly presented to the state courts, which means it is procedurally defaulted. The state courts' determination that there was no prejudice from any ineffective assistance is not an unreasonable application of *Strickland's* prejudice prong. Accordingly, ineffective assistance of counsel would not be grounds to excuse the procedural default.

10

## II. Ineffective assistance of counsel claims

Artic next alleges that he was deprived of his Sixth Amendment right to effective assistance of trial and postconviction counsel. Criminal defendants have a constitutional right "to the effective assistance of counsel." *Strickland*, 466 U.S. at 686 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). To succeed on an ineffective-assistance-of-counsel claim, a habeas petitioner "must show both that counsel's representation fell below an objective standard of reasonableness, and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (citing *Strickland*, 466 U.S. at 688, 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "[C]ourts need not address both prongs of *Strickland*" if the petitioner makes an inadequate showing as to one. *Atkins v. Zenk*, 667 F.3d 939, 946 (7th Cir. 2012) (citing *Strickland*, 466 U.S. at 697).

"Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. On habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, when a *Strickland* claim is evaluated under § 2254(d)(1), the standard of review is said to be "doubly deferential." *See Mirzayance*, 556 U.S. at 123 (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003) (per curiam)).

Artic asserts that postconviction counsel should have raised trial counsel's ineffectiveness on five grounds: (1) failing to object when the circuit court allowed the bailiff

11

to present an alleged kilogram cocaine wrapper to the jury during deliberations and had *ex parte* communications with the jury when it asked to see the wrapper; (2) failing to argue that Artic was unlawfully seized within his home; (3) failing to investigate and impeach one of the State's witnesses; (4) failing to file a motion *in limine* addressing the admissibility of the alleged cocaine wrapper and a photo of it; and (5) failing to challenge the initial entry on the first floor of Artic's home. *See* ECF No. 1 at 9–10.

The Wisconsin Court of Appeals acknowledged that ineffective assistance of postconviction counsel may constitute a sufficient reason for failing to raise the claim on direct appeal. *See* ECF No. 8-19 at 3. The court then applied the two-pronged *Strickland* standard. *Id.* Examining each of the five arguments, I cannot say that the Wisconsin Court of Appeals' application of *Strickland* was "objectively unreasonable" or "well outside the boundaries of permissible differences of opinion." *Kamlager v. Pollard*, 715 F.3d 1010, 1015 (7th Cir. 2013).

### A. Failure to object to cocaine wrapper and *ex parte* discussion with jury

Artic alleges that trial counsel failed to object when the circuit court allowed the jury to view the alleged cocaine wrapper and had *ex parte* communications with the jury. *See* ECF No. 11 at 6–7. The circuit court rejected both arguments, explaining that the parties had stipulated to the exhibits that could be sent to the jury during deliberations, if requested, so that the court would not have to call the parties to view a specific exhibit.[2] *See* ECF No. 8-19 at 4–5. The parties identified three exhibits that the jury could not view, and the cocaine wrapper was not on that list. *See id.* at 4. After the verdict, the court informed the parties that the jury had requested a number of exhibits (including the wrapper); the bailiff took the

---

[2] On appeal, Artic argued that he didn't consent to counsel's stipulation. *See* ECF No. 8-18 at 5. The Wisconsin Court of Appeals noted that Artic didn't voice any concerns when the parties discussed and stipulated to which exhibits could go to the jury and that he raised this argument for the first time in his reply brief. *See* ECF No. 8-19 at 4 n.4. Artic cannot blame this mistake on counsel; he chose to represent himself in litigating this appeal.

12

wrapper back to the jury room but then returned with it having never left his hands. *Id.* The circuit court emphasized that this was not *ex parte* communication, and the court did not need to contact the parties because of the parties' stipulation. *Id.* (citing Wis. Stat. § 805.13(1)). The circuit court concluded that trial counsel was not ineffective for failing to raise these objections. *Id.* at 5. The Wisconsin Court of Appeals adopted this reasoning. *See id.* at 7 ("This court agrees with the circuit court's thorough analysis of the merits of Artic's postconviction claims. As such, we adopt the circuit court's decision as our own and affirm.").

On habeas review of an ineffective assistance of counsel claim, the court does not consider whether it would have called the parties back into the courtroom to discuss the jury's request to see the cocaine wrapper. The court considers solely whether the Wisconsin Court of Appeals reasonably applied the *Strickland* standard. On this record, Artic has not demonstrated that counsel was ineffective in failing to object to the jury viewing the alleged cocaine wrapper or the court's comments to the jury based on the stipulation between the parties and the explanation provided by the circuit court.

### B. Failure to raise illegal seizure

Next, Artic alleges that trial counsel failed to challenge his alleged unlawful seizure. *See* ECF No. 1 at 9. In his § 974.06 motion, Artic argued that his seizure was unlawful because the police unlawfully entered his home. *See* ECF No. 8-16 at 8. The circuit court determined that Artic had no legal grounds to raise this claim because the Wisconsin Supreme Court had already held on direct appeal that Artic voluntarily consented to the search of the upstairs unit and that the upstairs search was attenuated from the initial unlawful entry. *See* ECF No. 8-19 at 5. Again, the Wisconsin Court of Appeals adopted the circuit court's reasoning. *See id.* at 7.

13

Artic has failed to demonstrate that the court of appeals' decision was objectively unreasonable. The record shows that Artic fully litigated the Fourth Amendment issue during his direct appeal. Trial counsel filed a motion to suppress all evidence seized in the home based on the police's forced entry. To the extent counsel missed any arguments, postconviction counsel covered his bases. *See* ECF No. 8-2. However, the Wisconsin Supreme Court rejected Artic's arguments for suppressing the evidence found in the upstairs unit. Because the police found cocaine residue and indicia of drug trafficking during that search, Artic was lawfully seized. Counsel therefore was not ineffective for failing to make a losing argument.

### C. Failure to investigate and impeach Detective Wagner's Testimony

Artic challenges trial counsel's failure to object to Detective Wagner's allegedly false testimony about Artic's house being the target of the investigation. *See* ECF No. 11 at 5–6. Wagner testified at the suppression hearing that he received information from detectives that a confidential informant said the seller would arrive in a vehicle and go Artic's house. *See* ECF No. 8-23 at 4–5. At trial, the other officers purportedly testified that the informant did not identify a particular house. *See* ECF No. 11 at 5. Artic contends trial counsel should have impeached Wagner with his "false" suppression hearing testimony and sought to reopen the suppression hearing. *See id.* at 5–6. The circuit court rejected this argument, finding that Artic "put forth no evidence that Wagner's testimony at the motion hearing *was* false." *See* ECF No. 8-19 at 5 & n.5. The court further determined that, even if the testimony were false, it would not have invalidated Artic's consent or significantly impacted Wagner's (or the other officers') credibility. *See id.* at 5–6. Thus, Artic had failed to show that he was prejudiced by

counsel's alleged error. *See id.* at 6. The Wisconsin Court of Appeals adopted the circuit court's reasoning. *See* ECF No. 8-19 at 7.

The court of appeals reasonably applied *Strickland* in resolving this claim. Wagner consistently testified that he did not have direct contact with the confidential informant; rather, he learned that information from his fellow officers. Thus, Wagner's testimony at the suppression hearing that he was told they were investigating a particular house appears to be an error of communication rather than deliberate falsification. And even if the testimony were false, it would not have been so damaging to Wagner's credibility as to reasonably have an affect on the suppression hearing or at trial. Any discrepancy in Wagner's testimony regarding why he was at Artic's home in the first instance does not change the Wisconsin Supreme Court's analysis on consent. Artic has not otherwise shown how he was prejudiced by trial counsel's alleged failure to impeach Wagner's testimony.

### D. Failure to file motion *in limine* to exclude alleged cocaine wrapper

Artic alleges that trial counsel failed to file a motion *in limine* to exclude the alleged cocaine wrapper and a photograph of the wrapper on grounds that the wrapper was never tested. *See* ECF No. 11 at 7. The circuit court explained that the jury heard testimony that the State did not send the wrapper to the crime lab, and that, even without this wrapper, there was no probability that the outcome of the trial would have been different. *See* ECF No. 8-19 at 6. The court of appeals adopted this reasoning, which is a sound application of *Strickland*. The wrapper was not the only indicia of drug trafficking recovered from the residence. Thus, it's highly likely that, had the wrapper not been admitted into evidence, the result of trial would have been the same.

### E. Failure to challenge illegal entry

15

Case 2:14-cv-00228-SCD   Filed 06/12/20   Page 15 of 18   Document 19

Artic's final ineffective assistance of counsel claim—that trial counsel failed to challenge the forced entry into the home and failed to move to suppress all evidence from the first floor (that is, the cocaine wrapper)—fails because, as the circuit court pointed out, counsel did seek to suppress *all* evidence seized from the home. *See* ECF No. 8-19 at 6. After the circuit court denied the motion following a hearing, postconviction counsel raised trial counsel's ineffectiveness on direct appeal. The Wisconsin Court of Appeals properly applied the prejudice prong of *Strickland* in finding that, even if the evidence had been suppressed, there was no reasonable probability that the result would have been different. *Id.* As explained above, the police recovered additional indicia of drug trafficking from the upstairs unit of the residence; the alleged cocaine wrapper found in the first-floor unit was not needed to sustain a conviction.

***

Because Artic has failed to demonstrate that he is entitled to relief on his underlying trial counsel claims, his ineffective assistance of postconviction counsel claims fail as well.

### III. Equal protection and due process claims

Artic also brings claims based on equal protection and due process. A federal court may grant a petition for writ of habeas corpus only where "the applicant has exhausted the remedies available in the state" and where the applicant has not procedurally defaulted his claims. 28 U.S.C. § 2254(b)(1)(A). These limitations allow the state courts a fair opportunity to hear and act on the petitioner's claims. To avoid this procedural bar, the petitioner must invoke one complete round of the state's appellate review process for each of his claims. *O'Sullivan v. Boerckel*, 526 U.S.838, 845 (1999).

Artic never raised his equal protection or due process claims in the state courts. As such, I may review these claims only if: (1) he shows cause for failure to raise the claim, and actual prejudice resulting therefrom; or (2) refusal to consider the defaulted claim would result in a fundamental miscarriage of justice, where a constitutional violation has resulted in the conviction of one who is actually innocent. *See Edwards v. Carpenter*, 529 U.S. 446 (2000). The Supreme Court has defined cause sufficient to excuse procedural default as "some objective factor external to the defense" which precludes the petitioner's ability to pursue his claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Nothing in Artic's submissions establishes cause for the default or demonstrates a fundamental miscarriage of justice. Postconviction counsel raised trial counsel's ineffectiveness on direct appeal. Artic himself raised postconviction counsel's alleged ineffectiveness in a second Wis. Stat. § 974.06 motion and a second appeal. Nothing external to his defense prevented him from pursuing either claim in the state courts. Both the equal protection and due process claims must therefore be dismissed as procedurally defaulted.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For a certificate of appealability to issue, a petitioner must show that "reasonable jurists" would find this court's "assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, I cannot conclude that the assessment of the merits of Artic's claims is debatable by reasonable jurists.

Moreover, where a petition is denied (here, in part) on procedural grounds, the petitioner must show both that reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Here, no reasonable jurist would find the court's procedural rulings debatable. Accordingly, a certificate of appealability will be denied.

## CONCLUSION

For the reasons given above, the petition is **DENIED** and the case is **DISMISSED**. A certificate of appealability is **DENIED**. The clerk will enter judgment accordingly.

**SO ORDERED** this 12th of June, 2020.

_____
STEPHEN C. DRIES
United States Magistrate Judge